Chief Justice Roberts,
with whom Justice Alito joins, concurring.
I share Justice Scalia’s concern that permitting a candidate to identify his political party preference on an official election ballot — regardless of whether the candidate is endorsed by the party or is even a member — may effectively force parties to accept candidates they do not want, amounting to forced association in violation of the First Amendment.
I do think, however, that whether voters perceive the candidate and the party to be associated is relevant to the constitutional inquiry. Our other forced-association cases indicate as much. In Boy Scouts of America v. Dale, 530 U. S. 640, 653 (2000), we said that Dale’s presence in the Boy Scouts would “force the organization to send a message . . . [to] the world” that the Scouts approved of homosexuality. In other words, accepting Dale would lead outsiders to believe the Scouts endorsed homosexual conduct. Largely for that reason, we held that the First Amendment entitled the Scouts to exclude Dale. Id., at 659. Similarly, in Hurley v. Irish-American Gay, Lesbian and .Bisexual Group of Boston, Inc., 515 U. S. 557 (1995), we allowed the organizers of Boston’s St. Patrick’s Day Parade to exclude a pro-gay rights float because the float’s presence in the parade might create the impression that the organizers agreed with the float sponsors’ message. See id., at 575-577.
*460 Voter perceptions matter, and if voters do not actually believe the parties and the candidates are tied together, it is hard to see how the parties’ associational rights are adversely implicated. See Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U. S. 47,65 (2006) (rejecting law schools’ First Amendment objection to military recruiters on campus because no reasonable person would believe the “law schools agree[d] with any speech by recruiters”). After all, individuals frequently claim to favor this or that political party; these preferences, without more, do not create an unconstitutional forced association.
What makes these cases different, as Justice Scalia explains, is the place where the candidates express their party preferences: on the ballot. See post, at 465 (dissenting opinion) (noting “the special role that a state-printed ballot plays in elections”). And what makes the ballot “special” is precisely the effect it has on voter impressions. See Cook v. Gralike, 531 U. S. 510, 532 (2001) (Rehnquist, C. J., concurring in judgment) (“[T]he ballot ... is the last thing the voter sees before he makes his choice”); Anderson v. Martin, 375 U. S. 399, 402 (1964) (“[Directing the citizen’s attention to the single consideration of race . . . may decisively influence the citizen to cast his ballot along racial lines”).
But because respondents brought this challenge before the State of Washington had printed ballots for use under the new primary regime, we have no idea what those ballots will look like. Petitioners themselves emphasize that the content of the ballots in the pertinent respect is yet to be determined. See Reply Brief for Washington State Grange 2-4, 7-13.
If the ballot is designed in such a manner that no reasonable voter would believe that the candidates listed there are nominees or members of, or otherwise associated with, the parties the candidates claimed to “prefer,” the 1-872 primary system would likely pass constitutional muster. I cannot say on the present record that it would be impossible for *461 the State to design such a ballot. Assuming the ballot is so designed, voters would not regard the listed candidates as “party” candidates, any more than someone saying “I like Campbell’s soup” would be understood to be associated with Campbell’s. Voters would understand that the candidate does not speak on the party’s behalf or with the party’s approval. On the other hand, if the ballot merely lists the candidates’ preferred parties next to the candidates’ names, or otherwise fails clearly to convey that the parties and the candidates are not necessarily associated, the 1-872 system would not survive a First Amendment challenge.
Justice Scalia complains that “[i]t is hard to know how to respond” to such mistaken views, post, at 467 (dissenting opinion), but he soldiers on nonetheless. He would hold that a party is burdened by a candidate’s statement of preference even if no reasonable voter believes from the ballot that the party and the candidate are associated. I take his point to be that a particular candidate’s “endorsement” of a party might alter the party’s message, and this violates the party’s freedom of association. See post, at 468 (dissenting opinion).
But there is no general right to stop an individual from saying, “I prefer this party,” even if the party would rather he not. Normally, the party protects its message in such a case through responsive speech of its own. What makes these cases different of course is that the State controls the content of the ballot, which we have never considered a public forum. See Timmons v. Twin Cities Area New Party, 520 U. S. 351, 363 (1997) (ballots are not “forums for political expression”). Neither the candidate nor the party dictates the message conveyed by the ballot. In such a case, it is important to know what the ballot actually says — both about the candidate and about the party’s association with the candidate. It is possible that no reasonable voter in Washington State will regard the listed candidates as members of, or otherwise associated with, the political parties the candidates claim to prefer. Nothing in my analysis requires the *462 parties to produce studies regarding voter perceptions on this score, but I would wait to see what the ballot says before deciding whether it is unconstitutional.
Still, I agree with Justice Scalia that the history of the challenged law suggests the State is not particularly interested in devising ballots that meet these constitutional requirements. See post, at 468 (dissenting opinion). But this record simply does not allow us to say with certainty that the election system created by 1-872 is unconstitutional. Accordingly, I agree with the Court that respondents’ present challenge to the law must fail, and I join the Court’s opinion.